# BEAVERS *v.* HAUBERT.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 354. Argued February 23, 1905.—Decided April 17, 1905.

## SAME *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 355. Argued February 23, 1905.—Decided April 17, 1905.

The rule that where jurisdiction has attached to a person or thing it is exclusive in effect until it has wrought its function is primarily a right of the court or sovereignty itself. The sovereignty where jurisdiction first attaches may yield it, and the implied custody of a defendant by his sureties cannot prevent it, although the bail may be exonerated by the removal. Where the court consents, the Government may elect not to proceed on indictments in the court having possession of the defendant and may remove him to another district for trial under indictments there pending. Whether such election exists without the consent of the court, not decided.

The constitutional right of a defendant to a speedy trial and by a jury of the district where the offense was committed, relates to the time and not to the place of trial, and cannot be invoked by a defendant, indicted in more than one district, to prevent his removal from the district in which he happens to be to the other in which the Government properly elects to try him.

In removal proceedings, the degree of proof is not that necessary upon the trial, and where defendant makes a statement and under the law of the State claims exemption from, and refuses to submit to, cross-examination, the deficiencies of his statement may be urged against him, and, unless the testimony removes all reasonable ground of the presumptions raised by the indictment, this court will consider the commissioner's finding of probable cause was justified.

The District of Columbia is a district of the United States within the meaning of § 1014, Rev. Stat., authorizing the removal of accused persons from one district to another. *Benson* v. *Henkel, ante,* p. 1.

THESE cases were submitted together. No. 354 is an appeal from an order and judgment of the District Court of the Eastern District of New York, in *habeas corpus,* remanding to

the custody of appellee. No. 355 is an appeal from an order of the United States Circuit Court for the same district, dismissing a writ of *habeas corpus* arising out of the same proceedings as No. 354. The same questions of law are presented and we need not further distinguish the cases.

The arrest, from which appellant prayed to be discharged, was made upon a commitment and warrant in proceedings to remove him to the District of Columbia, to be tried upon an indictment there found against him. He attacks the commitment and warrant as not being due process of law, in that the commissioner who issued them had no jurisdiction to entertain proceedings against him, or to require bail, or in default thereof to commit him to await the order of the District Judge, because indictments were pending against him in the Circuit Court of the United States for the Eastern District of New York. The contention is that while the indictments were so pending he could not be removed to another jurisdiction.

The facts are as follows: On the sixteenth of July, 1903, two indictments were found against appellant in the Eastern District of New York, charging him with violations of sections 1781 and 1782 of the Revised Statutes of the United States, and on the twenty-fifth of July, 1903, another indictment was found against him in the same district for the violation of section 1781.

On the third of September, 1903, a bench warrant was issued on the indictments and proceedings instituted against him on the indictment of July 25, 1903. A warrant of removal was issued by the District Judge of the Southern District of New York, and subsequently an order was entered by the Circuit Court, directing appellant to surrender himself to the United States marshal for said district, and in pursuance thereof the appellant did so, and entered into a recognizance before one of the District Judges for said district in the penal sum of $10,000 for his appearance in the Circuit Court for the Eastern District at the next regular term.

On the first of June, 1904, he appeared in said court in pursuance of the notice from the United States District At-

torney, for the purpose of pleading to the indictments. On the seventh of June, a continuance having been granted, he moved to quash the indictment on affidavits and other papers properly served on the District Attorney. On the eighth he appeared before the Circuit Court, "prepared to move upon and plead to the said indictments." Thereupon the District Attorney refused to proceed further with the indictments, but stated his intention to institute proceedings for the removal of appellant to the District of Columbia, under the indictments found against him there. The court thereupon continued the proceedings until the thirteenth of June, 1904, from time to time thereafter, until the date of the petition herein, and enlarged him from day to day upon his recognizance, which is still in full force. On the eighth of June, 1904, he was arrested upon the warrant now in question. The indictments have not been quashed or nolle prossed, and the appellant is ready to plead thereto if the motions submitted in respect thereto be overruled.

The petitioner alleges that the only evidence adduced by the Government was a certified copy of the indictment, which, it is alleged, constituted no proof, but was incompetent and inadmissible because it failed to state facts sufficient to constitute a crime, and because it appeared from the testimony of the witnesses on whose testimony it was found and who were called before the commissioner that there was no probable cause to believe he was guilty of any offense against the United States, and whatever strength the indictment possessed was rebutted by such evidence.

*Mr. William M. Seabury,* with whom *Mr. Bankson T. Morgan* was on the brief, for appellant:

The arrest and commitment of the appellant on warrants issued by a United States Commissioner in a proceeding brought to effect his removal to the District of Columbia, while he was in the custody of the Circuit Court of the United States for the Eastern District of New York for trial, and

subject to its jurisdiction, was void as an unlawful interference with the jurisdiction of such Circuit Court, and a violation of the appellant's constitutional rights.

In criminal cases priority of jurisdiction is determined by the date of service of process. *United States* v. *Lee,* 84 Fed. Rep. 631; *Craig* v. *Hoge,* 28 S. E. Rep. (Va.) 317; *Union Mutual Life Ins. Co.* v. *University of Chicago,* 6 Fed. Rep. 443; *Owens* v. *Railroad Co.,* 20 Fed. Rep. 10; *Wilmer* v. *Railroad Co.,* 30 Fed. Cases, 73; *Herndon* v. *Ridgway,* 17 How. 424; *Chaffee* v. *Hayward,* 20 How. 208, 215; *Boswell's Sons* v. *Otis,* 9 How. 336, 348; *Pennoyer* v. *Neff,* 95 U. S. 714; *Mexican Central Ry.* v. *Pinkney,* 149 U. S. 194, 209.

The fact that Beavers had given bail on the first arrest and was not in actual custody of the marshal when the second arrest took place is immaterial. *In re Beavers,* 125 Fed. Rep. 988. By admission to bail the appellant had not been relieved from custody.

When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. See Bail, Bacon's Abridg.; *Taylor* v. *Taintor,* 16 Wall. 371; *Anon's Case,* 6 Mod. 231; *Cosgrove* v. *Winney,* 174 U. S. 68; *In re Grice,* 79 Fed. Rep. 633; *United States* v. *Stevens,* 16 Fed. Rep. 105; *Turner* v. *Wilson,* 49 Indiana, 581; *Divine* v. *State,* 5 Sneed. 625; *Levy* v. *Arnsthall,* 10 Grat. (Va.) 641; *Ex parte Gibbons,* 1 Atk. 238; Spear on Extradition, 445; Petersdorf on Bail, 91, 406.

Wherever a conflict of jurisdiction has arisen between a state and Federal court, the court whose jurisdiction has first attached to the person or thing, has universally held and retained it until its completion. No other court has been permitted by its process to interfere with the jurisdiction of the court which has first attached. *Byers* v. *McAuley,* 149 U. S. 608, 614; *Hagan* v. *Lucas,* 10 Peters, 400; *Taylor* v. *Carryl,* 20 How. 583; *Peck* v. *Jenness,* 7 How. 612, 625; *Freeman* v. *Howe,* 24 How. 450; *Ellis* v. *Davis,* 109 U. S. 485, 498; *Krippendorf* v. *Hyde,* 110 U. S. 276, 280; *Covell* v. *Heyman,* 111

U. S. 176; *Borer* v. *Chapman*, 119 U. S. 587, 600; *In re Chambers, Calder & Co.*, 98 Fed. Rep. 866; *Jordan* v. *Taylor*, 98 Fed. Rep. 643; *Keegan* v. *King*, 96 Fed. Rep. 758; *Chapin* v. *James*, 11 R. I. 87; *The E. L. Cain*, 45 Fed. Rep. 367; *Moran* v. *Sturges*, 154 U. S. 256, 269, 279; *Ex parte Chetwood*, 165 U. S. 443, 460; *Pac. Coast S. S. Co.* v. *Bancroft Whitney Co.*, 94 Fed. Rep. 186; *Yonley* v. *Lavender*, 21 Wall. 276; *Sharon* v. *Terry*, 36 Fed. Rep. 337; aff'd 131 U. S. 40.

The same principle is universally applicable where Federal and state courts each claim jurisdiction over the same person at the same time. *Abelman* v. *Booth*, 21 How. 506; *Tarble's Case*, 13 Wall. 397; *Robb* v. *Connolly*, 111 U. S. 624; *In re Spangler*, 11 Michigan, 298; *In re James*, 18 Fed. Rep. 853.

In fact even where a State has sought the rendition of a fugitive from another State, if he is held in custody in the State upon which the demand is made on account of an offense committed therein, the duty to surrender is postponed until the existing charge against the prisoner has been satisfied. Am. & Eng. Ency. of Law, vol 12, p. 604; *Matter of Troutman*, 24 N. J. Law, 634; *Matter of Briscoe*, 51 How. Pr. 422; *Hobbs* v. *State*, 22 S. W. Rep. (Tex.) 1035; *Taintor* v. *Taylor*, 36 Connecticut, 242; *Taylor* v. *Taintor*, 16 Wall. 366; *Ex parte Rosenblat*, 51 California, 285; Clark Cr. Proc., 63; Spear on Extradition, 442.

The rule is the same where Federal courts of different districts have asserted jurisdiction at the same time over the same personal property. *Re Miller*, 30 Fed. Rep. 895; *Ames* v. *Ry. Co.*, 60 Fed. Rep. 967, 974; *Clyde* v. *Richmond & D. R. Co.*, 65 Fed. Rep. 336; *Chattanooga Terminal Ry. Co.* v. *Felton*, 69 Fed. Rep. 273, 283; *N. Y. Security & Trust Co.* v. *Equitable Mtge. Co.*, 71 Fed. Rep. 556; *Wiswall* v. *Sampson*, 14 How. 60.

This principle is not restricted in its application to questions of jurisdiction between courts of different sovereignties, but is applicable wherever two courts subject to the same general sovereignty and existing under the same judicial system seek

to exercise criminal jurisdiction over the same person for antagonistic purposes at the same time. *In re Johnson,* 167 U. S. 125; *In re Beavers,* 125 Fed. Rep. 988; *In re Beavers,* 131 Fed. Rep. 366.

A United States Commissioner is a subordinate ministerial officer, an arm or branch of the District Court, and is himself neither court nor judge. *United States* v. *Allred,* 155 U. S. 595; *Todd* v. *United States,* 158 U. S. 278; *Rice* v. *Ames,* 180 U. S. 371, 378; *United States* v. *Schumann,* 2 Abb. U. S. 523; *United States* v. *Jones,* 134 U. S. 483; *Re Ellerbe,* 13 Fed. Rep. 530; *In re Perkins,* 100 Fed. Rep. 950; *Ex parte Dole,* 7 Phila. 595. Even conceding the right of the commissioner to issue process against the appellant, the process could not be lawfully executed by the marshal so long as he was in the custody of a court of superior jurisdiction. *In re Beavers,* 125 Fed. Rep. 988; *Hobbs* v. *The State,* 22 S. W. Rep. 1035; *Matter of Troutman,* 24 N. J. Law, 634; *Higgins* v. *Dewey,* 39 N. Y. 94.

Whether or not the Circuit Court might have waived or relinquished its jurisdiction is immaterial. This was never done. The appellant's recognizance was not cancelled. If the arrest of the appellant herein under a commissioner's warrant was void, no subsequent willingness of the Circuit Court to waive its jurisdiction could give the arrest validity.

The refusal of the District Attorney to proceed with the prosecution and the failure of the court below to discharge Beavers from the arrest complained of deprived him of his constitutional right to a speedy trial by jury in the Eastern District of New York. *United States* v. *Fox,* 3 Montana, 312; note to *In re Bergeron,* 85 Am. St. Rep. 178, 204; Sutherland's notes on the U. S. Const.; *Nixon* v. *State,* 41 Am. Dec. 601; Cooley Const. Lim., 7th ed., 440.

The positive evidence adduced by the appellant before the commissioner was such as wholly to deprive the indictment of its *prima facie* probative force, and the decision of the commissioner was in effect a determination that the indictment was conclusive evidence.

See § 196, N. Y. Code Civ. Pro., which is here applicable under the rule that proceedings under § 1014 are in all respects similar to criminal proceedings instituted before a committing magistrate in the State where the arrest is made, and are controlled and governed by the rules of evidence and procedure in such State. *Re Dana,* 68 Fed. Rep. 886, 893; *United States v. Rundlett,* 2 Curt. 42; *United States v. Case,* 8 Blatch. 251; *United States v. Horton,* 2 Dill. 94; *United States v. Brawner,* 7 Fed. Rep. 86, 90; *United States v. Martin,* 17 Fed. Rep. 150, 156; *Re Burkhardt,* 33 Fed. Rep. 25; *United States v. Green,* 100 Fed. Rep. 941.

The indictment is not conclusive evidence of the facts therein stated. *United States v. Green,* 100 Fed. Rep. 941; *S. C.,* 108 Fed. Rep. 816; *Green v. Henkel,* 183 U. S. 241; *In re Richter,* 100 Fed. Rep. 295; *In re Belknap,* 96 Fed. Rep. 614; *In re Wood,* 95 Fed. Rep. 288; *United States v. Price,* 84 Fed. Rep. 636; *In re Price,* 83 Fed. Rep. 830; aff'd 89 Fed. Rep. 84; *In re Dana,* 68 Fed. Rep. 886; *United States v. Fowkes,* 49 Fed. Rep. 50; *In re Wolf,* 27 Fed. Rep. 606; *Alexander's Case,* 1 Lowell, 530; *United States v. Haskins,* 3 Sawy. 262; *United States v. Pope,* 24 Inter. Rec. 29. In *Beavers v. Henkel,* 194 U. S. 73, this point was not considered.

*Mr. Assistant Attorney General Purdy* for the United States:

The fact that an indictment is pending against George W. Beavers in the United States Circuit Court for the Eastern District of New York in no manner affects the power or the right of the United States Government to institute and maintain proceedings against said Beavers, under § 1014, Rev. Stat., for the purpose of securing his appearance for trial before the Supreme Court of the District of Columbia. *Taylor v. Taintor,* 16 Wall. 271, is not in point.

Whether a removal proceeding from Brooklyn to Washington would operate to discharge the sureties upon the bond of Beavers for his appearance at Brooklyn for trial is a question which need not here be considered.

Every sovereignty has the power to waive its right to try a person accused of having committed an offense against its laws, and may elect to surrender such accused person, without his consent, to a demanding State. *Taylor* v. *Taintor*, 16 Wall. 366; *In re Hess*, 5 Kan. App. 763; *State* v. *Allen*, 2 Humph. (Tenn.) 258.

The evidence produced upon the hearing, in behalf of the defendant, was totally insufficient to overthrow the *prima facie* case established by the Government.

Mr. Justice McKenna, after stating the facts as above, delivered the opinion of the court.

It will be observed that indictments were found against appellant in the Eastern District of New York. He was then living in the city of New York, which is in the Southern District. He was removed from the latter by removal proceedings to the former for trial, and, having been called upon to plead to the indictments, he made certain motions in respect thereto. The District Attorney, however, announced an intention not to proceed further with the prosecution, and announced further that he intended to prosecute proceedings to remove appellant to the District of Columbia for trial. This was done, and with the consent of the court. It is stated in Judge Thomas's opinion that the Circuit Court "deferred the hearing of the motions pending the hearing before the commissioner, for the purpose of allowing the warrant to be served upon the defendant (petitioner), and to permit the proceedings to continue before the commissioner."

The appellant contends, nevertheless, that the commissioner had no power to issue warrants, and relies on two propositions:

(1) The proceedings were void because they were an unlawful interference with the jurisdiction of the Circuit Court for the Eastern District of New York, in the custody of which he was.

(2) The proceedings were a violation of appellant's constitutional rights to a speedy trial by jury upon such indictments.

(1) In support of the first proposition is urged the principle "that where jurisdiction has attached to a person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function." *Taylor* v. *Taintor*, 16 Wall. 366, 370. But this is primarily the right of the court or sovereignty, and has its most striking examples in cases of extradition. The cited case shows that whatever right a party may have is not a constitutional right. The question in the case was the effect on the bail of a defendant given to a State by the action of its Governor, sending him out of the State under extradition proceedings. It was held that his bail was exonerated. The court said: "It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law." And the act of the Governor of a State yielding to the requisition of the Governor of another State was decided to be the act of the law. It was further said: "In such cases the Governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse there is no means of compulsion, but if he act, and the fugitive is surrendered, the State whence he is removed can no longer require his appearance before her tribunals, and all obligations which she has taken to secure that result thereupon at once, *ipso facto*, lose their binding effect."

This case establishes that the sovereignty where jurisdiction first attaches may yield it, and that the implied custody of a defendant by his sureties cannot prevent. They may, however, claim exemption from further liability to produce him.

There is nothing in *In re Johnson*, 167 U. S. 120, which militates against this view. Indeed, that it is the right of the court of sovereignty to insist upon or waive its jurisdiction

is there decided (page 126). In *Cosgrove* v. *Winney*, 174 U. S. 68, Cosgrove was brought into this country from Canada under a treaty which confined action against him to the very offense for which he was surrendered until he should have an opportunity of returning. His subsequent arrest for a non-extraditable offense was held to be a violation of the process under which he was brought into the United States, and therefore illegal.

The Circuit Court, as we have seen in the case at bar, consented to the removal of the appellant, and we are not called upon to decide whether the Government had the right of election, without such consent, to proceed in New York or the District of Columbia.

(2) Undoubtedly a defendant is entitled to a speedy trial and by a jury of the district where it is alleged the offense was committed. This is the injunction of the Constitution, but suppose he is charged with more than one crime, to which does the right attach? He may be guilty of none of them, he may be guilty of all. He cannot be tried for all at the same time, and his rights must be considered with regard to the practical administration of justice. To what offense does the right of the defendant attach? To that which was first charged, or to that which was first committed? Or may the degree of the crimes be considered? Appellant seems to contend that the right attaches and becomes fixed to the first accusation, and whatever be the demands of public justice they must wait. We do not think the right is so unqualified and absolute. If it is of that character it determines the order of trial of indictments in the same court. Counsel would not so contend at the oral argument, but such manifestly is the consequence. It must be remembered that the right is a constitutional one, and if it has any application to the order of trials of different indictments it must relate to the time of trial, not to the place of trial. The place of trial depends upon other considerations. It must be in the district where the crime was committed. There is no other injunction or condition,

and it cannot be complicated by rights having no connection with it. The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice. It cannot be claimed for one offense and prevent arrest for other offenses; and removal proceedings are but process for arrest—means of bringing a defendant to trial. And this leads to the other contentions of appellant.

Upon the hearing before the commissioner the Government introduced in evidence a copy of the indictment and proof of the identity of appellant. The latter called witnesses and made a statement in his own behalf, and contends that he rebutted every material allegation of the indictment, and that the finding of the commissioner gave to the indictment the effect of conclusive proof.

Two questions are involved, whether appellant may rebut the indictment and whether he has done so. If the latter be answered in the negative, and we think it must be, no reply need be given to the other.

There is no question made of the sufficiency of the indictment. It certainly charges a crime. It charges that Beavers was Superintendent of the Division of Salaries and Allowances in the office of the First Assistant Postmaster General, and that he entered into a corrupt agreement with W. Scott Towers, an agent of the Elliott & Hatch Book Typewriter Company, whereby Towers promised to pay to Beavers the sum of twenty-five dollars out of each two hundred dollars paid to said company for book typewriters, and that Beavers received from Towers, in pursuance of the agreement, a draft for the sum of three hundred and fifty dollars. The agreement was made and the draft given for the purpose of influencing Beavers' official judgment and action. The only testimony that is material to notice was delivered by Henry J. Gensler, Charles Flint, Howard W. Jacobs and E. H. Schley.

Gensler testified that up to June, 1900, he was an agent of the Elliott & Hatch Book Typewriter Company, and as such

had charge of all the trade in the locality of the District of
Columbia. After that time his son had such charge. It may
be inferred that he had some knowledge of his son's business
and was familiar with sales made during the year 1900. He
testified that he had no knowledge of any agreement with
Towers and Beavers in October, 1900, relating to Beavers'
official conduct with regard to the Elliott & Hatch Book
Typewriter Company.

Flint was the assistant treasurer and the assistant secretary
of the company from February, 1901, to March, 1903. He
testified that during the year 1901 the corporation, so far as
the books and accounts showed, paid no money to Beavers for
any purpose whatever, and that he had no knowledge that
would lead him to believe that such money was paid. He
further testified that if any money of the corporation had been
paid for the purpose of securing the contract of the Govern-
ment it would necessarily have come under his notice. Also
that he had no knowledge of money being paid by Towers to
Beavers, nor had he knowledge of money having been author-
ized by the corporation to be paid, either directly or indirectly,
to Beavers either three hundred and fifty dollars, or any sum,
on July 11, 1901, or any other time, and if such payment had
been authorized he would have known it. He further testified
that the sales to the Post Office Department were to Mr.
Gensler, and the method adopted was that the machines were
charged to Gensler as being outright purchases by him at one
hundred and forty dollars each. The machines returned were
credited to his account. A few sales were charged directly
against the Postmaster General, with the understanding that
they were to be paid for at two hundred dollars and charged
to Gensler at one hundred and forty dollars. He also testified
that while he was assistant treasurer he had no knowledge of
the payment of money to Gensler or of authority given Gensler
to pay money to Towers for Beavers, for the purpose of in-
fluencing Beavers' official action in regard to the sale of the
Elliott & Hatch Book Typewriter, or that Beavers ever re-

ceived anything of value from the company for such purpose; and that if such payment had been made he believed he would have known it.

Howard W. Jacobs was bookkeeper and cashier of the corporation; Schley became secretary and treasurer in 1899. Both these witnesses testified as to knowledge of the affairs of the corporation, the trades made by it, and sales in Washington of machines and the business and knowledge of the payment by the corporation or any of its officers or agents to Beavers, or to Towers for Beavers substantially as Flint. The witnesses also testified that the Elliott & Hatch machines were the best of the book typewriters and their usual price was $200.

Beavers was sworn for the purpose, as expressed by his counsel, "of permitting the accused to make a statement in his own behalf." In answer to questions of his counsel he testified that he was the person accused and the person against whom three indictments had been found in the Eastern District of New York, charged with violations of sections 1781 and 1782 of the Revised Statutes of the United States. That it was not at his instance the Elliott & Hatch typewriter was placed in the Post Office Department; it was placed there under the direction of the First Assistant Postmaster General. It was the rule of the Department in making the allowance for the typewriter to act under the instructions of that officer, and he so acted. Under a like rule he acted in the purchase of the machines, and he further testified that he entered into no agreement with Towers whereby he was to receive $25 for each typewriter thereafter purchased by the Post Office Department. He admitted he received a draft from Towers, but it was in the nature of a loan, as he remembered it; also that he received many drafts from Towers, who was a man of considerable influence with the banks of Washington, and frequently obtained drafts for him (Beavers) and had notes discounted for him. This practice ran through their entire acquaintance. There was not, he further testified, on or

about July 11, 1901, any matter relating to the Elliott & Hatch Book Typewriter pending before him.

Counsel for Government attempted to cross-examine Beavers to which the latter's counsel objected. The commissioner ruled against the objection, and counsel directed Beavers not to answer. The objection to cross-examination was based upon the ground that Beavers took the stand merely for the purpose of making a statement in answer to the charge made against him and to explain the facts alleged, in accordance with section 196 of the New York Code of Criminal Procedure, and, it was urged, that that section, or any other section which governed the proceedings, did not contemplate cross-examination. And counsel further observed that as the indictment, which was the basis of the proceedings, was not the only one found against Beavers "for that reason it would be extremely unwise to allow him to enter into any rambling cross-examination."

The commissioner committed the appellant in default of bail, finding that there was probable cause that the offenses charged had been committed. The finding was affirmed by the District Court in the proceedings for *habeas corpus*.

We think the finding was justified, in other words, the proof afforded by the indictment was not overcome, and this is all that it is necessary to now decide. Regarding the letter of the testimony when weighed with the indictment, it does not remove all reasonable grounds of presumption of the commission of the offense. The degree of proof is not that necessary upon the trial of the offense, and a certain latitude of judgment must be allowed the commissioner. We cannot say that such latitude was exceeded. The testimony was negative and, for the most part, confined to general statements, and Beavers resisted cross-examination, and the test of the circumstances which might thereby have been elicited. But granting that he could under the New York Code offer himself to be sworn and deliver a statement under the directions of questions by counsel and be exempt from cross-examination,

nevertheless the deficiencies of his statement may be urged against him. It cannot be said, therefore, that the commissioner's finding of probable cause was not justified.

The contention that the District of Columbia is not a District of the United States within the meaning of section 1014 of the Revised Statutes, authorizing the removal of accused persons from one District to another, is disposed of by *Benson* v. *Henkel,* page 1.

The orders of the Circuit Court and the District Court dismissing the writs of *habeas corpus* are

*Affirmed.*