STATE OF TENNESSEE, Plaintiff in Error, v.
WILLIAM B. McCULLOUGH, Defendant in Error.
—470 S.W.2d 50

February 12, 1971.

Certiorari Denied by Supreme Court August 16, 1971.

David M. Pack, Attorney General, C. Hayes Cooney,
Assistant Attorney General, Nashville, C. Douglas Thor-
eson and Harold D. Hardin, Assistant District Attorneys

General, and Thomas H. Shriver, District Attorney General, Nashville, for plaintiff in error.

Joe P. Binkley, Nashville, for defendant in error.

MITCHELL, J. This is an appeal by the State of Tennessee from the judgment of Division Three of the Criminal Court of Davidson County, Tennessee, Honorable Allen R. Cornelius, Jr., Judge presiding, wherein two presentments returned by the Grand Jury at the May 1969 term against William B. McCullough were dismissed by the court on motion of the defendant on the ground he had been denied a speedy trial.

The parties will be referred to as the State and the defendant.

The minutes show that on July 22, 1969 the Grand Jury in the Criminal Court of Davidson County, returned two presentments endorsed ''A True Bill'' against the defendant William B. McCullough charging that on the ——day of February, 1969 he did unlawfully, and feloniously, make an assault upon the body of one Kelvie D. Howell and then and there did cruelly beat, wound and bruise and otherwise ill treat the said Kelvie D. Howell with the intent to commit a felony, to wit: voluntary manslaughter, and against the peace and dignity of the State of Tennessee. In another presentment he was charged with assault and battery upon Kelvie D. Howell on the same date.

This case evidently was taken up by the trial judge for arraignment on March 13, 1970, when counsel for the defendant raised the question that the defendant had not

been given a speedy trial that he was not arrested on these charges until approximately six and one-half months after the grand jury indicted him. That in the meantime on October 14, 1969 the prosecutor Kelvie Howell had sued the defendant McCullough in an action of damages, the service had been had on the defendant and the case was at issue in the Circuit Court. That the defendant had also appeared at a hearing before the Civil Service Commission in the courthouse. That the defendant worked at Kroger in August, September, October and November and had not missed a day from his work, and that he had been available for service of process. They called and told him they had a capias for him and he came up voluntarily.

The trial judge addressed the Attorney General, "General is the State in a position to answer the allegation at his time. Of course, this is actually for arraignment today and I think the State ought to be given an opportunity to answer if any answer they have, as to why they waited so long."

Counsel for the defendant stated to the court that warrants were issued on the night of this offense, February 1969 and that the Chief of Police, after the warrants were issued ordered them not to be served.

The trial judge then said to counsel for the defendant. "Let me suggest Mr. Binkley, since this is an arraignment, that you reduce your motion or your question to a motion in writing and serve a copy on the State and let the State file an answer and act on it next Friday."

On March 16, 1970, William B. McCullough by and through his counsel filed a motion to dismiss the presentments on the grounds that he had been denied a speedy trial, that although he was available, he was not arrested until January 30, 1970, more than six months after the return of the presentments by the Grand Jury.

When the Court reconvened March 20, 1970 this hearing was resumed.

The court stated, "the presentment against William B. McCullough was received the 22nd day of July 1969, Earl Hawkins, Clerk. On the same day, or rather on the 29th day of July 1969, a capias was issued showing that this defendant worked at Kroger's Warehouse at night, that he lived at 1900 Avalon. Does it show what day he was arrested?"

MR. BINKLEY: "The capias was served on him on January 30, 1970."

THE COURT: "All right, during that time he had been before the Civil Service Commission hadn't he?"

MR. BINKLEY: "He appeared before the Civil Service Commission, if the court please, to be exact on August 12, 1969. He was sued in the Circuit Court October 14, 1969."

The Attorney General stated to the court that he did not contest these facts, but insisted that it was incumbent upon the defendant to show some kind of prejudice, or that certain rights were violated that the mere lapse of

six months between the return of the presentments and the arrest of the defendant was not sufficient to show that his Sixth Amendment rights to a speedy trial had been violated.

The court after hearing the motion, sustained it and dismissed the presentments under T.C.A. 40-2102, for lack of a speedy trial.

The Attorney General excepted to the action of the court in dismissing the presentments and made a motion for a new trial which was heard and overruled. The State excepted, appealed and assigned errors as follows:

1. That the trial court erred in granting the Defendant's motion to dismiss herein on the ground that the lapse of six months between the date the presentments herein were returned and the date on which the Defendant was arrested in an insufficient period to violate or infringe the Defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution.

2. That the trial court erred in granting the Defendant's motion to dismiss herein upon the ground that the Defendant failed to allege or prove any prejudice or hardship interfering with his ability to defend these cases on the merits accruing or arising out of the delay of six (6) months between the date of the return of the presentments herein and the date of the Defendant's arrest.

These two assignments will be considered together.

No witnesses were introduced on the hearing but the pertinent facts which seem to have been accepted by counsel for the State and the defendant are that the two true bills, referred to as presentments were returned by the Grand Jury, July 22, 1969 charging the offenses were committed in February 1969. That the defendant was not arrested until January 30, 1970. The reason for the delay in making the arrest is not shown, although it was determined the capias had been issued July 29, 1969.

It was said that the defendant was working for a well known grocery food store in Nashville. That he had appeared at a hearing before the Civil Service Commission, at the Courthouse and that he had been sued by the prosecutor in an action of damages in October 1969, and was known to be available so that the arrest could have been made.

The question is has the defendant been deprived of a speedy trial because a period of six months and 13 days elapsed between the return of the presentments and the date of arrest.

There is no explanation of the delay in making the arrest. There is no suggestion of any prejudice, inconvenience, incarceration, harassment, distress, worry or vexation suffered by the defendant.

Certainly there is nothing to show that the State purposely delayed execution of the capias nor is there anything to show that the defendant could be charged with the delay.

There is no indication that the delay complained of has or will unfavorably affect his ability to make a defense to the charges, or that his right to a fair trial has been or will be jeopardized.

It is well to remember that the delay complained of is six months and 13 days, the delay between indictment and arrest.

During that time the defendant was not under arrest, not under bond, apparently had not been publicly accused. If he knew of the existence of the indictment he does not show that he suffered any embarrassment, or inconvenience.

Arrowsmith v. State, 131 Tenn. 480, 175 S.W. 545, is one of the leading cases in Tennessee on the question of a denial of a speedy trial. In that case there were eleven forgery cases pending at the October term 1911 against the defendant Arrowsmith. At that term he was convicted on one of the forgery indictments and sentenced to three years in the State Penitentiary. The other cases were continued without consent of the defendant, and at the October term 1912 in the absence of and without the consent of the defendant, the remaining cases were retired from the docket, until the expiration of the sentence. After the expiration of his sentence he was again put on trial at the October term 1914, convicted again and sentenced.

This conviction of Arrowsmith was reversed and the Court said:

"A 'speedy trial,' so guaranteed, means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexations, or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused."

"As we have seen, the orders entered on October 24, 1912, by which the several untried cases against Arrowsmith were 'retired from the docket until the expiration of said sentence', were made in the absence and withoutt the knowledge or consent of the accused, who was at the time an inmate of the State Penitentiary, and without the knowledge or consent of his counsel."

Here in the Arrowsmith case there was a delay of approximately two (2) years.

Other important recent cases that have considered the right to a speedy trial are:

In Klopfer v. N. C., 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, (1967) sustained petitioners' right to a speedy trial, in a case where he was indicted in February 1964, tried in March 1964 mistrial, then was continued from time to time until August 1965. The district attorney (solicitor) moved to enter a nolle seventeen (17) months after indictment with leave to reinstate the case which was allowed, the defendant appealed, and his contention was upheld by the court.

In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed. 2d 607 (1969) the petitioner was indicted in Harris County, Texas in 1960 while he was serving a sentence in the Federal Prison at Leavenworth, Kansas. He promptly sent a letter by mail to the Texas trial court requesting a speedy trial, and was notified he would be given a trial within two weeks of any date he might specify at which he could be present. After that from time to time for a period of the next six years petitioner by letters and motions asked for a speedy trial. The Supreme Court of the United States held that the State of Texas had a constitutional duty to make a diligent, good faith effort to bring him before the Harris County Court for trial. In this case there was a delay of six (6) years.

We point out here, that the Supreme Court did not order the charges against Smith to be dismissed but remanded for further proceedings, that is, to make a good faith, diligent effort to secure the presence of accused for trial.

Mr. Justice Harlan in a separate opinion, apparently agreeing in principle with the rule in Smith v. Hooey, said:

"I agree that a State may not ignore a criminal accused request to be brought to trial, merely because he is incarcerated in another jurisdiction, but that it must make a reasonable effort to secure his presence for trial. This much is required by the Due Process Clause of the Fourteenth Amendment, and I would rest decision of this case on that ground and not on "incorporation" of the Sixth Amendment's speedy trial pro-

vision into the Fourteenth. (393 U.S. 384, 89 S.Ct. 580.)

See my opinion concurring in the result of Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1, 9 (1967).

I believe, however, that the State is entitled to more explicitness from us as to what is to be expected of it on remand than what is conveyed merely by the requirement that further proceedings not be ''inconsistent with this opinion.'' Must the charges against petitioner be dismissed? Or may Texas now secure his presence and proceed to try him? If petitioner contends that he has been prejudiced by the nine-year delay, how is this claim to be adjudicated?

This case is one of first impression for us, and decides a question on which the state and lower federal courts have been divided. Under these particular circumstances, I do not believe that Texas should automatically forfeit the right to try petitioner. If the State still desires to bring him to trial, it should do so forthwith. At trial, if petitioner makes a prima facie showing that he has in fact been prejudiced by the State's delay, I would then shift to the State the burden of proving the contrary.''

In Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, cited in the Attorney General's brief, Mr. Justice Brennan said in a concurring opinion:

''It is likely that generalized standards would have to be developed to indicate when during the course of a

delay there arises probability of substantial prejudice. Until delay exceeds that point, the burden most probably would remain on the accused to show that he was actually harmed. Once, however, delay exceeds that point, prejudice would cease to be an issue, unless the government wishes to argue harmless error."

"When is governmental delay reasonable? Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is "purposeful or oppressive,' is unjustifiable."

\* \* \* \* \* \*

"Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and on the other, the length of the delay and its potential for prejudice to interests protected by the speedy trial safeguard."

"What are the criteria to be used in judging the constitutionality of those delays to which the safeguard applies? This Court has stated that '(t)he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, supra, 198 U.S. 77 at 87, 25 S.Ct. at 576, 49 L.Ed. 950 at 954. We have also observed that '(w)hile justice should be adminis-

tered with dispatch, the essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041, 1048 (1959). It appears that consideration must be given to at least three basic factors in judging the reasonableness of a particular delay: the source of the delay, the reasons for it, and whether the delay prejudiced interests protected by the Speedy Trial Clause."

Prominently considered in these decisions on this subject is the question of whether the defendant has been prejudiced by the delay. No prejudice is shown by the defendant. If the defendant knew there was an indictment against him there is nothing to show that he made any demand for a speedy trial.

These decisions place emphasis on the question of whether the delay complained of did in legal contemplation work prejudice to the constitutional rights of the defendant.

No prejudice is shown, and we find none.

We sustain the State's assignments of error and hold that the trial judge erred in sustaining the motion of the defendant and in dismissing the presentments. The judgment is reversed and remanded.

Dwyer and O'Brien, JJ., concur.