Clayton **CHAPEL**, #120782

v.

**MARYLAND PENITENTIARY WARDEN.**

**Civ. No. K–74–77.**

United States District Court, D. Maryland.

July 30, 1975.

---

Edward M. Norton, Jr., Baltimore, Md. (Court-appointed), for plaintiff.

Francis B. Burch, Atty. Gen. of Md., Arrie W. Davis, Asst. Atty. Gen. of Md., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Chapel, presently confined in the Maryland Penitentiary, herein seeks habeas corpus relief in this Court for the first time. Chapel was convicted after a jury trial presided over by Judge J. Gilbert Prendergast in the Criminal Court of Baltimore on October 2, 1972 of attempted robbery with a deadly weapon and possession of a deadly weapon and was sentenced by Judge Prendergast to a term of confinement of twenty years on the first charge and three years on the second charge. Chapel's conviction was affirmed by the Court of Special Appeals of Maryland on July 19, 1973. Subsequently, the Court of Appeals of Maryland denied certiorari. Chapel's first quest for post-conviction relief was denied by Judge Paul A. Dorf, sitting in the Criminal Court of Baltimore, on December 27, 1973. Application for leave to appeal from that denial was itself denied by the Court of Special Appeals on February 27, 1974. Chapel's second petition for post-conviction relief was denied by Judge I. H. Hammerman, sitting in the Criminal Court of Baltimore, on July 5, 1974. Seemingly no appellate review of that denial was sought by Chapel. Herein, Chapel raises only one contention, namely, that counsel was not appointed to represent him sufficiently soon after his arrest so as to enable counsel to represent Chapel adequately and effectively in his jury trial presided over by Judge Prendergast. Chapel raised that contention in his post-conviction proceeding before Judge Dorf. Accordingly, Chapel has exhausted his state remedies with regard there-

to. After Chapel, acting *pro se,* instituted the within proceeding, this Court appointed counsel other than Chapel's trial counsel to represent Chapel herein.[1]

Counsel stipulated many of the relevant facts herein either before or prior to the end of two evidentiary proceedings held by this Court. Chapel was arrested on December 8, 1971 and charged with assault and attempted armed robbery. On that same date Chapel was taken before a Commissioner in the District Court of Maryland, District I, Baltimore City, for a bail information hearing. At that hearing, at which Chapel was not represented by counsel, bail was denied. On the next day, December 9, 1971, Chapel appeared, still without counsel, before Judge William M. Hudnet, sitting in District I, District Court of Maryland. At that time Judge Hudnet again denied Chapel bail and scheduled a preliminary hearing for December 23, 1971.[2] On December 23, 1971 another hearing was held before Judge Hudnet. At that hearing the State waived a preliminary hearing because Chapel was not represented by counsel. Bail was again denied and Chapel was committed to the Baltimore City Jail pending action by the grand jury. On January 24, 1972, Chapel was indicted by a grand jury of the Criminal Court of Baltimore on charges of attempted robbery with a deadly weapon and carrying a deadly weapon with intent to injure. On February 6, 1972, while confined in connection with the robbery and deadly weapon charges, seemingly without bail having been set, in the Baltimore City Jail, Chapel was arrested and charged with attempted escape. Bail on the attempted escape charge was set at $10,000. On March 22, 1972, Chapel was arraigned before Judge Solomon Liss, sitting in the Criminal Court of Baltimore, and pled not guilty to the robbery and deadly weapon charges upon which he had been indicted on January 24, 1972. Chapel was not represented by counsel at the arraignment. Judge Liss told Chapel that a representative of the Maryland Public Defender's office would be appointed to represent him. The next day, March 23, 1972, Judge Liss wrote to the Maryland Public Defender directing that counsel be appointed to represent Chapel. Alfred J. O'Ferrall, III, Esq., Public Defender for Baltimore City, received Judge Liss's letter on the day it was written. On April 6, 1972, Chapel was tried without counsel in the Eastern Division of the District Court of Maryland on the attempted escape charge, Judge Hudnet presiding.[3] Judge Hudnet found Chapel guilty of attempted escape

1. It is to be noted that Chapel does not raise any allegation of incompetence against his trial counsel. Chapel's sole contention herein deals with the late appointment of that counsel. It is also to be noted that Chapel's trial counsel testified as a witness herein.

2. During the hearing on December 9, 1971 the following dialogue between Judge Hudnet and Chapel took place (12/9/71 Tr. 3) :

> COURT: There will be no bail in your case and your case will be tried on December 23rd at 9:00. A preliminary hearing in this courtroom.. There's an indication on your (inaudible) here that you told the Commissioner you were going to get your own lawyer. Is this right?

> MR. CHAPEL: I can't (inaudible—someone coughing).

> COURT: Now, when you get over to City Jail, you let the Commissioner in Charge know that you want to talk to the Public Defender. And you tell all you want to say to your own (inaudible) Public Defender.

Judge Hudnet's reference to a "Commissioner in Charge" is somewhat unclear. Testimony in this case seems to establish that no such official was available at the Baltimore City Jail in 1971 or 1972 and that no such position at that jail existed at that time.

3. The record of that proceeding includes the following :

> UNIDENTIFIED: He wants to get a lawyer. He is waiting trial on other charges.

> COURT: Have you been? Are you serving a sentence? Are you waiting on the court's side?

> MR. CHAPEL: I am waiting on the court's side.

> COURT: Let the attendant know you want to use the telephone.

> MR. CHAPEL: We can't carry any money.

and sentenced him to a term of one year. Chapel was thereafter transferred from the Baltimore City Jail to the Maryland Penitentiary. On April 11, 1972, Chapel filed an appeal to the Criminal Court of Baltimore from his attempted escape conviction by the District Court alleging, *inter alia,* that he had not been afforded legal representation. Subsequently, Chapel was tried *de novo* in the Criminal Court of Baltimore on the attempted escape charge.[4] On May 11, 1972, Charles Simonsen, an investigator employed by the Public Defender's office, interviewed Chapel in connection with the robbery and deadly weapon charges.[5] On May 15, 1972, Chapel was transferred from the Maryland Penitentiary to the Maryland House of Correction. On May 18, 1972, O'Ferrall wrote to Luther C. West, Esq., and appointed him to represent Chapel in connection with the robbery and deadly weapon charges. On June 13, 1972, Chapel was interviewed at the Maryland House of Correction by Mr. Walter Bowling, an investigator for the Public Defender, in connection with the attempted escape charge. Apparently, West first met

Chapel and interviewed him on June 19, 1972.[6] On October 3, 1972, Chapel was tried and convicted in the Criminal Court of Baltimore for both of the robbery and deadly weapon offenses of which he had been charged in the January 24, 1972 indictment. On December 1, 1972, Arnold M. Zerwitz, Esq., an attorney in the Public Defender's office, was appointed to represent Chapel with regard to the attempted escape charge. On December 22, 1972, Chapel was tried and convicted of attempted escape after a non-jury trial in the Criminal Court of Baltimore before Judge Joseph C. Howard and was sentenced to a term of one year to run concurrently with his sentence on the attempted robbery and carrying a deadly weapon charges.

The precise question raised herein is whether the delay in appointing counsel to represent Chapel in connection with the robbery and deadly weapon charges denied Chapel the effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendments. Seemingly, there is little or no decided case law directly on point.[7] Chapel does not contend that there was insufficient time

---

COURT: You have a right to talk to your lawyer; for that reason they must let you use the telephone.

Just make sure he will be able to call his counsel so we don't have another postponement.

Judge Hardgrove [sic] would not let me fix any bails in these particular matters because he knew that I was going to be here to try these cases so he fixed the bail and he has them fixed each of $10,000 so I can't do anything about that.

The Public Defender in your own case because of your action does not care to represent you in this matter so I am going to transfer you to—

MR. CHAPEL: I'll plead guilty, I'll plead guilty.

COURT: No you're not going to plead guilty.

I don't think the court will accept that. Do you want to be tried here and now without an attorney?

MR. CHAPEL: Right.

COURT: Alright.

Chapel is not being represented by an attorney.

4. That new trial seemingly was held in accordance with Chapel's right to a *de novo* trial pursuant to 2B Md.Ann.Code art. 26, § 156 (1973 Repl.Vol.), then in force and effect. The recodification presently in force and effect makes no change in that regard. See Md.Ann.Code, *Cts. & Jud.Proc.* art., § 12–401 (1974).

5. Simonsen had been formerly a detective in the Baltimore City Police Department for 24 years (Tr. 169). He impressed this Court, during his appearance on the witness stand in this case, as a thoroughly competent investigator.

6. West's records are not clear on this point. It is stipulated however that West first met Chapel sometime in late June 1972.

7. In Cummings v. Edwards, Mem.Dec. No. 74–1889 (4th Cir. April 14, 1975), the Court stated without further discussion, in the course of agreeing with the District Court's denial of relief: "We do not see how petitioner was in any way prejudiced by the one-month delay in appointment of counsel." In *Cummings*, petitioner had pled guilty in a North Carolina Court and sought federal ha-

between appointment of counsel and trial for his trial counsel to prepare for trial. Rather, Chapel contends that by the time that trial counsel was appointed, it was not possible for him to secure witnesses or otherwise prepare for Chapel's trial due to the passage of time between Chapel's arrest and the effective commencement of investigation and preparation by counsel.

In *Barker v. Wingo*, 407 U.S. 514, 521–22, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972), Mr. Justice Powell wrote:

> Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. If, for example, the State moves for a 60-day continuance, granting that continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the values the right protects. It is impossible to do more than generalize about when those circumstances exist. There is nothing comparable to the point in the process when a defendant exercises or waives his right to counsel or his right to a jury trial. Thus, as we recognized in *Beavers v. Haubert, supra,* [198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905)] any inquiry into a speedy trial claim necessitates a

functional analysis of the right in the particular context of the case:

> "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." 198 U.S., at 87 [25 S.Ct. 573, at 576, 49 L.Ed. 950.]

[Footnotes omitted.]

■ *Barker* dealt specifically with the Sixth Amendment right to a speedy trial and its possible infringement by a delay in bringing an accused to trial. By way of contrast, the within case deals with the Sixth Amendment right to effective assistance of counsel and its possible infringement by a delay in appointment and availability of counsel. While there are some differences in the interests protected by each of those rights,[8] they both have that "vague" characteristic which Mr. Justice Powell referred to in *Barker* since in the case of both of those rights it is " * * * impossible to determine with precision when the right has been denied." Accordingly, the four-fold balancing test which Mr. Justice Powell in *Barker* established for use in a speedy trial context would appear to be appropriate for use herein. The prongs of that test, described by Mr. Justice Powell in *Barker*, 407 U.S. at 530, 92 S.Ct. 2182 *et seq.,* are: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.

■ In considering the first factor, length of delay, Judge Winter, in *Twi-*

---

beas corpus relief alleging his innocence and claiming he had been coerced into pleading guilty.

8. Mr. Justice Powell noted in *Barker*, 407 U. S. at 521, 92 S.Ct. at 2187, that " * * * deprivation of the right [to a speedy trial] may work to the accused's advantage." That, for instance, is the case when the memory of a prosecution witness

has faded with passage of time. Seemingly for that reason Mr. Justice Powell explained (407 U.S. at 519, 92 S.Ct. at 2186) that " * * * there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." No such societal interest, distinct from that of the accused, would however seem present in connection with the issue presented herein.

ford v. Peyton, 372 F.2d 670, 673 (4th Cir. 1967),[9] wrote:

> * * * It suffices to say that an unnecessary and an unexplained delay between incarceration and the appointment of counsel gives rise to a substantial possibility of prejudice to an accused because defense witnesses may be dispersed or, if not dispersed, their recollections may fade. Cf. Edgerson v. State of North Carolina, 315 F.2d 676 (4 Cir. 1963). * * *

> As Braxton v. Peyton * * * [365 F.2d 563 (4th Cir. 1966)], and Turner v. State of Maryland, 318 F.2d 852, 853 (4 Cir. 1963), exemplify, we have on occasion found that effective assistance of counsel was not denied, notwithstanding the late time of appointment or lack of preparation of counsel where the record showed affirmatively that an accused was not prejudiced thereby. In doing so, we have implied that these deplorable practices are inherently prejudicial, and a mere showing of them constitutes a *prima facie* case of denial of effective assistance of counsel, so that the burden of proving lack of prejudice is shifted to the state. Cf. Shuman v. Peyton, 361 F.2d 646, 649 (4 Cir. 1966). * * * [Footnote omitted.]

Herein the delay commenced at the time of Chapel's arrest on December 8, 1971, or shortly thereafter, and lasted until at least May 11, 1972 when Chapel was interviewed by Simonsen, a period of some 153 days. At the maximum, the delay did not terminate until June 19, 1972 when Chapel was first interviewed by his trial attorney, a period of some 194 days. Such delays, while seemingly not so long as *per se* to constitute a violation of Chapel's rights, are each sufficiently long to act as what Mr. Justice Powell called in *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, "a triggering mechanism". In *Twiford*, Judge Winter described such delay as constitutionally "a *prima facie* case of denial of effective assistance of counsel", which requires the state to assume the burden of proving a lack of prejudice.[10]

The second factor mentioned in *Barker* is the reason for delay. Herein there has been no showing or even allegation that any improper motive is attributable to the State. The only reason for the delay, suggested in testimony, was that Chapel's case apparently was processed very slowly by Maryland's public defender office during the period of its initial organization in the latter part of 1971 and the early part of 1972. Prior to that time, the Baltimore Legal Aid Bureau and attorneys individually appointed by the courts provided legal services to indigent criminal defendants. Additionally, it is possible that at least some of the delay may have been caused by Chapel's attempted escape from the Baltimore City Jail on February 6, 1972, his subsequent initial trial and initial conviction therefor on April 6, 1972, and his transfer out of the Baltimore City Jail to the Maryland Penitentiary shortly thereafter. In the hierarchy of justifications for delay to which Mr. Justice Powell refers in *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, at 2192, the causes for delay herein would seem to be "more neutral reason[s]" or even perhaps at least semi-"valid reason[s]" and clearly not "[a] deliberate attempt to delay the trial in order to hamper the defense * * *". *See also* the majority, concurring and dissenting opinions in *Ricon v. Garrison et al.*, 517 F.2d 628, (4th Cir. 1975).

The third factor in the *Barker* analysis is the defendant's assertion of his

---

9. In *Twiford*, the failure to appoint counsel for a defendant until the day before trial after the defendant had been confined for 76 days prior to trial, combined with the state trial court's denial of a motion to continue submitted on the date of trial plus the possible availability of a named alibi witness, was held to constitute denial of effective assistance of counsel.

10. *Twiford, supra* at 673.

right. As early as the day after his arrest, Judge Hudnet told Chapel that he should let the "Commissioner in Charge" know that he wanted to talk to the Public Defender. There is evidence that Chapel investigated at the time of his arrest the possibility of either obtaining counsel himself or having his sister, with whom he spoke over the telephone shortly after his arrest, obtain counsel for him (Tr. 10–12, 16–17). Also, it appears that sometime prior to Chapel's arrest, he had been charged with larceny or shoplifting and his sister and family had obtained counsel for him at that time (Tr. 26–28). *And see* the discussions quoted *supra* at notes 2 and 3. In view of Chapel's appeal of his first conviction for attempted escape filed on April 11, 1972, it would appear probable that, as of that date at least, Chapel had been advised of his right to have legal representation. Consequently, Chapel cannot plausibly claim to have been entirely ignorant of his right to counsel during the period from his arrest until counsel was appointed for him. Further, at no time from December 8, 1971 until June 19, 1972 when he finally did meet with counsel did Chapel either orally or in writing complain specifically that counsel had not been appointed on his behalf. Still, Chapel from the time of his arrest clearly desired counsel. In *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, Mr. Justice Powell stated: "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Herein it would appear inequitable to saddle Chapel with any great degree of blame for failure to assert his right to counsel.

The fourth *Barker* factor is prejudice to the defendant. In *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, Mr. Justice Powell wrote that " * * * the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[11] In this case, counsel for Chapel has stressed that Chapel's defense suffered possible prejudice by the delay in appointment of counsel to represent him, because by the time counsel was finally appointed and met with Chapel in late June 1972, it was no longer possible for counsel to locate witnesses who might have supported Chapel's testimony or controverted the testimony of the prosecution witnesses. Yet, it is hardly valid to contend that the June date is the key date, since on May 11, 1972 Chapel met with Simonsen, the investigator from the Public Defender's office. Simonsen testified in this Court (Tr. 170) that he asked Chapel during the interview on that date whether Chapel knew of any witnesses for or against him and that Chapel did not tell him of any such witnesses. Counsel for Chapel objected to any further disclosure of the contents of the May 11, 1972 interview and of the report which Simonsen wrote shortly after his May 11, 1972 meeting with Chapel and filed in the office of Maryland's Public Defender, on the basis that such information was protected by the attorney-client privilege. Simonsen was an employee of the Public Defender. Accordingly, pursuant to Md. Ann.Codes, *Cts. & Jud.Proc.* § 9–108 and 3 Md.Ann.Code art. 27A, § 8 (1973 Cum.Supp.), information given by Chapel to Simonsen was privileged.[12] It may well be that Chapel by instituting this

---

11. Mr. Justice Powell also identified in *Barker* two other possible sources of prejudice a defendant may suffer from delay, (1) oppressive pre-trial confinement and (2) anxiety and concern while awaiting trial. After February 6, 1972, Chapel was held in confinement at least in part because of the escape charge, and after April 6, 1972 was incarcerated as a result of his initial conviction upon that charge. Thus, Chapel seemingly did not suffer significant prejudice in those connections because of the delay considered herein.

12. Those Maryland statutes provide in part as follows:
§ 9–108. *Attorney-client privilege.*
A person may not be compelled to testify in violation of the attorney-client privilege.
§ 8. *Privileged communications.*
All communications between the individual defendant and any person in or engaged

suit and pressing the contentions advanced herein has waived his privilege against disclosure. However, in view of the strong objections of Chapel and of Mr. O'Ferrall, who testified during hearings in this Court, to the revelation to this Court, even *in camera*,[13] of the contents of that interview, this Court did not require any further disclosure. In that connection, this Court stated however, and counsel for Chapel, with the agreement of Chapel, conceded, that in its determination of the possible prejudice which Chapel suffered from the late appointment of counsel, this Court could not ignore the fact that Chapel's objection to testimony as to the May 11th interview prevents consideration of what is seemingly the most relevant available evidence.[14]

As noted above, when a delay is sufficiently long, it triggers judicial inquiry and also imposes upon the state the burden of going forward to show lack of prejudice to the accused. Herein, Chapel did not, as did the petitioner in *Twiford*, proffer a single specific witness who might have provided exculpatory testimony if he had been located and called to testify at trial. In *Twiford*, the presence of such a witness caused Judge Winter to comment and conclude (at 673):

> * * * In the case at bar, beyond proof of the facts showing inherent prejudice, appellant testified, without contradiction by the Commonwealth, that Frances Randall may have provided an alibi for one charge and a basis for attacking the credibility of a chief prosecution witness on both charges. Rather than a phantom wit-

ness, generated by a creative imagination, stimulated by long incarceration, the passage of time, and subsequent events rendering positive proof difficult, the record shows the claimed existence of this witness at the time of the original trial and provides corroboration, in part, of the nature of her testimony. The inability of counsel even to consider this woman as a witness because of the late time of his appointment was manifestly prejudicial. *Estes v. State of Texas*, 381 U. S. 532, 542–544, 85 S.Ct. 1628, 14 L. Ed.2d 543 (1965). To combat the showing of inherent prejudice, it was for the Commonwealth, and not appellant, to produce Frances Randall at the state habeas corpus hearing. Its failure to do so leaves the inference of prejudice, which must be drawn from the proof, unchallenged.

▇▇▇ Chapel has only conclusively asserted prejudice. He has neither named nor described nor referred to any individual witness. In the face of such a general assertion and Chapel's position with regard to the Simonsen interview, there would appear to be no evidence which the State can come forward with. Further, in the face of Simonsen's testimony—testimony deemed both credible and reliable by this Court—that Chapel, upon inquiry on May 11, 1972, did not tell Simonsen that Chapel knew of any witnesses, the burden shifts back to Chapel, despite the passage of time from January 1972 to May 11, 1972, to come forward with evidence of prejudice. This Chapel has not done. A weighing of all of the factors in this case, in the light of *Barker*'s four standards, re-

---

by the Public Defender shall be fully protected by the attorney-client privilege to the same extent and degree as though counsel had been privately engaged. * * *

13. The State stated its willingness to accept an *in camera* inspection by this Court and not to press for revelation in open Court of Simonsen's recollection of the May 11th interview and/or of the report he filed.

14. What tipped this Court in the direction of not overruling Chapel's objection to Simon-

sen's further testimony was the feeling of this Court that if Chapel himself chose to choke off evidence of prejudice with full realization of the effect thereof upon his within quest for habeas corpus relief, this Court should on balance permit him so to do and not bring about testimony by Simonsen which might perhaps have been prejudicial to Chapel in the future in connection with his confinement program, parole and ultimate, hoped-for rehabilitation.

quires the conclusion that Chapel has not shown that he was denied the effective assistance of counsel by the delay between his arrest in this case and his first contact with an employee of the Public Defender's office on May 11, 1972. While the reasons for the delay in this case, though not venal, are far from satisfactory, and while a defendant such as Chapel should be afforded counsel promptly—in Chapel's case, in December 1971 or in January 1972—and while the length of delay in this case was far too great, nevertheless, in the absence of the showing of any prejudice, the scales tip clearly against the grant of relief herein. There is, therefore, no reason to order a new trial. There is of course no reason to order Chapel's release. Accordingly, Chapel's quest for habeas corpus relief is hereby denied.[15]

---

15. This Court expresses its sincere appreciation to Edward M. Norton, Jr., Esq. for his excellent representation of Chapel as counsel appointed by this Court.