Commonwealth *v.* Ditzler et al., Appellants.

74

Submitted November 9, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Frederick S. Wolf* and *Beaver, Wolf & Brandt,* for appellants.

*George E. Christianson,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 13, 1971:

The sole but difficult and important question posed by this appeal is whether or not the appellants were denied their constitutional right to a speedy trial.[1]

The facts are as follows:

On February 15, 1965, the appellants, Charles G. Ditzler and Leon Ruhl, were indicted in Lebanon County on charges of prison breach, robbery by assault and force and larceny of a motor vehicle, all of which crimes allegedly occurred on January 13, 1965.

Before the indictments were returned, Ditzler and Ruhl had been taken into custody in the State of Tennessee, convicted on criminal charges [violation of the Dyer Act, 18 USC §2312, transportation of a stolen automobile in interstate commerce] in the Federal District Court and sentenced to imprisonment for a term of five years in the Federal Penitentiary at Atlanta.

In November 1965, Ditzler filed a petition in Lebanon County Court requesting a speedy trial. Ruhl filed a similar request in December of that year. Counsel was appointed to represent them and, after argument, the petitions were denied on February 6, 1966.

On March 16, 1967, Ditzler and Ruhl petitioned the Court, requesting that the charges be dismissed for lack of prosecution. This petition was denied on April 11, 1967.

The district attorney of Lebanon County secured a writ of habeas corpus ad prosequendam on July 30, 1968. Motions to quash the indictments were filed on September 11th, and subsequently refused. On Septem-

---

[1] The case was submitted to us without oral argument on November 9, 1970. To date the district attorney of Lebanon County has failed to file a brief with tihs Court. Such irresponsibility on the part of a public official is emphatically condemned.

ber 16, 1968, Ditzler and Ruhl were convicted on the indictments by a jury. Post trial motions were dismissed and prison sentences were imposed. On appeal a majority of the Superior Court affirmed without opinion. Judge HOFFMAN filed a dissenting opinion in which Judge MONTGOMERY joined. Judge SPAULDING filed a separate dissenting opinion. See 217 Pa. Superior Ct. 105, 266 A. 2d 789 (1970). We granted allocatur.

The history of the development of the right to a speedy trial indicates that it was not designed solely to protect individuals who had formally been charged with a crime. The first written articulation of the right appeared in the Magna Charta, wherein it was written, "We will sell to no man, we will not deny or defer to any man either justice or right."[2] And though it was included by the Framers in the Bill of Rights, the Sixth Amendment speedy trial guarantee was long held applicable only as against federal government and not the states. However, in *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988 (1967), the United States Supreme Court ruled that the failure of states to accord a speedy trial is a deprivation of the right provided by the Sixth Amendment, made obligatory upon the states by the Fourteenth Amendment.[3]

Since the indictments[4] in the instant case were returned more than two years before the decision in

---

[2] Magna Charta, C. 29; Translated and quoted in E. Coke, The Second Part of the Institutes of the Laws of England 45 [5th Ed. E. Brooke 1797].

[3] Art. 1, §9 of the Pennsylvania Constitution provides: "In all criminal prosecutions the accused hath a right to . . . a speedy public trial by an impartial jury of the vicinage . . . ," but it was held prior to *Klopfer*, supra, that this, in itself, did not warrant anything beyond a discharge from imprisonment where indictment or trial was delayed. Cf. *Commonwealth v. Clark*, 439 Pa. 192, 266 A. 2d 741 (1970).

[4] Some courts have ruled that the right to a speedy trial attaches as soon as the prosecution is initiated. For example, see

*Klopfer* was announced [March 13, 1967], the question naturally arises as to whether *Klopfer* need be applied here. In *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575 (1969), the Court applied *Klopfer* retroactively[5] and since the relevant circumstances in *Smith v. Hooey* are substantially similar to those presented herein,[6] it logically follows that *Klopfer* also controls the instant case, and we so rule.

With the foregoing premise in mind, we proceed to a consideration of the central question involved.

---

*Hanrahan v. United States*, 348 F. 2d 363 (D.C. Cir. 1965). Other courts have held that the right does not arise until there has been an arrest. See *Lucas v. United States*, 363 F. 2d 500 (9th Cir. 1966). While others have said that the right does ont arise until there has been an indictment or formal complaint filed. See *Bruce v. United States*, 351 F. 2d 318 (5th Cir. 1965). But this question need not concern us here.

[5] The crucial question raised by considerations of retroactivity is what difference, if any, is there between analyzing the guarantee of speedy trial by using the Sixth Amendment alone as opposed to viewing it through the due process clause of the Fourteenth Amendment. One commentator explained it thusly, "The due process clause focuses on the single element of prejudice to the defendant's case caused by lapse of time, while the speedy trial provision allows considerations of the other factors which may make delay oppressive, factors particularly relevant in the case of convicts in another jurisdiction [Footnote] 100."

"100

Presumably, due process analysis would not find unreasonable an extended delay where the evidence against the convict is very strong and of a permanent nature, even though the anxiety stemming from the delay severely hampers the convict's rehabilitation and a detainer filed against him causes his prison privileges and chances of parole to be curtailed." Comment, "Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions", 77 Yale L.J. 767, 782 (1968).

[6] In *Smith* the defendant, while a prisoner in the Federal Penitentiary in Leavenworth, Kansas, was indicted in 1960 in Texas on a charge of theft. In 1969 he had not yet been tried in Texas, although the decision in *Klopfer* had been announced many months before. Herein, the defendants were not tried for more than seventeen months after the decision in *Klopfer* was filed.

In *Smith v. Hooey*, supra, Mr. Justice STEWART said at pp. 377-78, that the constitutional right to a speedy trial "has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: (1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibilities that long delay will impair the ability of the accused to defend himself. United States v. Ewell, 383 U.S. 116, 120, 86 S. Ct. 773, 776 (1966)." He added, "these demands are both aggravated and compounded in the case of an accused who is imprisoned in another jurisdiction."[7]

The *Smith-Hooey* case is rather muddled from an analytical standpoint by the fact that the case was remanded to the Texas court "for further proceedings not inconsistent with this opinion." Thus, the Court did not decide whether a delay of nine years denied petitioner a speedy trial, nor did the Justices give the state court any guidelines on how to decide that very issue. There were three separate concurrences: Justice BLACK stressing the fact that the judgment was set aside only for

[7] Justice STEWART explained that delay may ultimately result in as much oppression to one already a prisoner for the reasons that as to (1) above, the possibility of a partially concurrent sentence with the one already being served is lost of the trial of the pending charge is postponed and because under procedures widely practiced, the duration of his present imprisonment may be increased and conditions under which he must serve his sentence greatly worsened by the pendency of another outstanding criminal charge. As to (2) above, an untried charge, of which even a convict may be innocent, can have fully as depressive an effect upon a prisoner as upon a person who is at large since detainers have a corrosive effect on attempts to rehabilitate. (3) above, is self-explanatory since evidence and witnesses can disappear, memories fade and events lose their perspective. A man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.

the purpose of giving petitioner a trial; Justice WHITE saying that he understood the remand as leaving open the ultimate question whether Texas must dismiss the criminal proceedings, and Justice HARLAN who said, inter alia, that the state had not automatically forfeited its right to try the petitioner.

Long previous to *Klopfer* and *Smith,* the United States Supreme Court had consistently said that "the right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S. Ct. 573, 576 (1905). "Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances . . . The delay must not be purposeful or oppressive." *Pollard v. United States,* 352 U.S. 354, 361, 77 S. Ct. 481, 486 (1957). "[T]he essential ingredient is orderly expedition and not mere speed." *Smith v. United States,* 360 U.S. 1, 10, 79 S. Ct. 991, 997 (1959). In *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564 (1970), Chief Justice BURGER writing for the Court held: "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed . . . [T]he right to a prompt inquiry into criminal charges is *fundamental* and the duty of the charging authority is to provide a prompt trial." 90 S. Ct. at 1568, 1569. [Emphasis supplied.] This Court has aptly said that "in determining whether . . . fundamental rights are denied we must look at the substance of things rather than mere form." *Commonwealth ex rel. Smith v. Patterson,* 409 Pa. 500, 504, 187 A. 2d 278 (1963).

With the above mentioned principles in mind, we have examined the present record and find it inadequate to permit an intelligent determination of whether the appellants' right to a speedy trial has been vitiated.

It is therefore incumbent that further proceedings be held in that court where facilities permit development of the facts necessary for a proper determination. If the appellants' claim is sustained, then the charges must be dismissed. Cf. *Commonwealth v. Clark,* supra, n. 3. But before the claim is sustained, it must be established that the delay involved was oppressive *and* prejudicial. Cf. *United States v. Penland,* 429 F. 2d 9 (1970).

The order of the Superior Court and the judgments of the court of original jurisdiction are vacated, and the record is remanded to the trial court for further proceedings consonant with this opinion.

Mr. Justice COHEN took no part in the decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Although I concur in the vacating of appellants' convictions, I dissent from the majority's mandate directing that the record be remanded to determine whether the delay in bringing appellants to trial was prejudicial. In my view, such prejudice is already apparent on the record presently before us, and I would accordingly limit the inquiry upon remand to the question whether the Commonwealth made a diligent and good faith effort to bring appellants to trial after they had so demanded, a duty imposed upon the states by virtue of the United States Spreme Court's two recent decisions in *Smith v. Hooey,* 393 U.S. 374, 89 S. Ct. 575 (1969), and *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564 (1970).

To date it does not appear that appellants' ability to defend themselves has been impaired. However, the speedy trial guarantee of the Sixth Amendment is also designed to prevent undue and oppressive incarceration prior to trial and to minimize anxiety and concern

accompanying public accusation. *United States v. Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 776 (1966). In *Smith v. Hoey*, supra, the Court thoughtfully analyzed these latter factors as they pertain to the situation of one already in prison under a lawful sentence:

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial'. But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. . . .

"And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S. at 221-222, 87 S. Ct. at 992-993. In the opinion of the former Director of the Federal Bureau of Prisons, '[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.' " Id. at 378-79, 89 S. Ct. at 577-78 (citations omitted).

In the present case, trial was not had until almost three years after appellants' original requests for speedy trial. I believe that a delay of this length can certainly be characterized as inherently oppressive. Furthermore, this almost three-year delay has certainly prejudiced appellants by negating the possibility of their state sentences running at least in part concurrently with the unexpired portion of their federal sentences.

In light of the above, I would vacate appellants' convictions and remand the record with instructions that unless the Commonwealth establishes either that it expended a diligent effort in bringing appellants to trial or that such an effort could not in any event have succeeded, the judgments of sentence against appellants should be arrested. I would impose the burden of proof on this issue on the Commonwealth "since it, far more than the defendant, is likely to know why the delay took place." *Dickey v. Florida,* supra, 390 U.S. at 56, n.22, 90 S. Ct. at 1578, n.22 (BRENNAN, J., concurring).

Mr. Justice POMEROY joins in the concurring and dissenting opinion.