Commonwealth *v.* Wagner, Appellant.

Submitted June 21, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James B. Yelovich,* Public Defender, for appellant.

*Alexander Ogle,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 24, 1972:

This appeal involves the right of a federal prisoner to a speedy trial on untried state charges pending against him. The facts show that on February 2, 1970, the Grand Jury of Somerset County approved an indictment against the appellant, David Wagner, for the crime of larceny, arising out of the theft of a motor vehicle in late 1969. Trial was scheduled on this charge for February 24, 1970, but before this date appellant breached his bond and fled to Alabama. He was picked up in that state as a federal parole violator and subsequently returned to Pennsylvania on April 1, 1970 for incarceration in the United States Penitentiary at Lewisburg. On the date of his return to this state, the Somerset County District Attorney filed process with the federal penitentiary to serve as a detainer.

The appellant, under date of April 17, 1970, wrote letters to the District Attorney and the court in Somerset County asking that the larceny charge then pending against him be dropped and the detainer quashed or, in the alternative, that he be given speedy trial on the charge. The District Attorney responded on May 5, 1970 and advised Wagner that the charges would not be dropped and that he did not intend to bring the

case to trial until after the appellant's scheduled release from the penitentiary in 1971. The District Attorney informed appellant to consult his court-appointed attorney or the warden concerning the correct procedure to be followed. On May 27, 1970 Wagner filed a motion for speedy trial and the lower court, on June 1, 1970, entered an order directing that the case be listed for trial at the September Term, 1970, that being the next term of court. The September Term jury trials commenced in Somerset County October 13, 1970 and concluded about October 27, 1970.

On October 26, 1970, Wagner came before the court on the larceny charge. At this time, his counsel orally moved to quash the indictment on the ground that there had been a denial of the right to a speedy trial. Wagner argued below, as he argues in our court, that the delay in bringing him to trial required a reversal under the Act of June 28, 1957, P. L. 428 (19 P.S. §881 et seq.), our so-called "180-day rule". This rule requires the trial of untried indictments against prisoners within 180 days after proper request for such disposition is made by the prisoner involved. The record shows that trial was not held in the instant case until 192 days after Wagner first wrote to the court and District Attorney requesting to be tried on the indictment then outstanding. The lower court denied his motion and Wagner was told he would be afforded a jury trial the next day. Wagner decided to plead guilty to the charge, but specifically reserved the right to appeal on the speedy trial issue.

In analyzing this appeal, we must initially look to the Act of June 28, 1957 to determine whether it applies to the instant fact situation. An examination of the Act reveals that it does not. In Section 1(a) of the Act (19 P.S. §881) the first sentence provides: "Whenever any person has entered upon any term of

imprisonment in any *state, county,* or *municipal* penal or correctional institution *of this Commonwealth. . .".* [emphasis supplied] The appellant was an inmate of a *federal* correctional institution, and under the express language of the statute, was ineligible to proceed under its provisions. Furthermore, the Act clearly details the procedure an applicant must follow in submitting the request for disposition of untried indictments. Explained simply, the prisoner must submit his request through the warden, superintendent or other corrections authority having custody over him. Such official must then forward this request, accompanied by other documents, as specified in the Act, to the proper local District Attorney and court. Such procedure was not followed by appellant herein; he merely sent informal letters directly to the court and District Attorney stating his request. Even if he were eligible to seek the application of the Act, appellant could not ignore the procedure required. Cf. *Commonwealth v. Williams,* 10 Lebanon 420 (1965) and *Commonwealth v. Udelson,* 10 Chester 541 (1961).

Next, although the appellant has not raised any argument based upon the Act of September 8, 1959, P. L. 829, 19 P.S. 1431 et seq. (Agreement on Detainers), a full examination of his right to speedy trial requires reference to that statute. The pertinent provision of that statute reads as follows: "Article 3. (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against a prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate

court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . .". This section is analogous to Section 881; however 1431 applies to inmates held in *other* jurisdictions. Section 1431 requires that the incarcerating jurisdiction have a complementary statute before the section can become applicable. *Commonwealth v. Bressler*, 194 Pa. Superior Ct. 208, 166 A. 2d 549 (1960), cert. denied, 366 U.S. 932, 81 S. Ct. 1655. At the time of the appellant's request for trial, the federal government did not have such a statute.[1] Appellant argues that to draw a distinction between inmates imprisoned in Pennsylvania and jurisdictions having complementary legislation and those imprisoned in noncomplementary legislation jurisdictions is violative of the equal protection guarantee of the Fourteenth Amendment. Though we acknowledge that the decision in *Commonwealth v. Bunter*, 445 Pa. 413, 282 A. 2d 705 (1971), is not a precedent for the application of the rule of stare decisis, having been participated in by two justices (with a third concurring), we nevertheless do agree with the reasoning therein set forth by Justice EAGEN relative to the issue here involved: "The salient point of this argument is that despite the fact that the United States has not signed this interstate compact, the equal protection clause of the Fourteenth Amendment requires that Pennsylvania not discriminate in terms of granting a speedy trial between persons extradited from states that are signatories and prisoners coming from nonsignatory jurisdictions. This argument must fail for several reasons. It is certainly true that Pennsylvania cannot deny to any person whom it has charged with committing a crime the right to

---

[1] Since then, however, such a statute has been enacted, 18 U.S.C. App. (1970) (effective March 9, 1971).

a speedy trial. But with regard to prisoners extradited from certain states with which it has entered into prior agreement, the Commonwealth will accord the right to a speedy trial in a particularized manner, namely by following the provisions of the detainer act. Hence, 19 P.S. §1431 et seq., is ancillary to the right of a speedy trial and not a substitution for it. Since the federal government is not a party to the interstate compact, the appellant is not entitled to the benefit of the provisions of the Pennsylvania act." One could reasonably conclude upon the reading of the *Bunter* case that this statute, Section 1431, providing for a 180-day period "does not create a constitutional rule of thumb which measures the time boundary for a speedy trial. . . .[2] The equal protection argument would have merit only if it could be shown that the Commonwealth was discriminating purposefully or intentionally between those whom it had charged with crime, granting to some a speedy trial while denying it to others. The Sixth Amendment is a guarantee to all who stand accused of crime. However, the Commonwealth is free to adopt various methods of implementing this right including a comity arrangement with sister states as a method of trying fugitives. And hence while it cannot be gainsaid that an accused must have a speedy trial regardless of such comity arrangements, it does not follow that there has been purposeful discrimination because such a trial is not provided under the terms of the interstate compact." *Bunter*, supra, p. 422-23. Here, it must be borne in mind that it is the availability of the statutory 180-day period which immediately is at issue, and not the Sixth Amendment right to a speedy

---

[2] Justice EAGEN, at this point, was making specific reference to the 120-day period also contained in 19 P.S. §1431. It is submitted, however, that this statement has equal application to the 180-day period as well.

trial. Since Section 1431 is not applicable, appellant cannot rely on the 180-day provision.

Although appellant has not satisfied the requirements of the "180-day rule" under either statute (19 P.S. §881 or 19 P.S. §1431), he was certainly entitled to a speedy trial. Section 9 of Article I of the Pennsylvania Constitution establishes this right in our state. The federal constitutional right to a speedy trial, embodied in the Sixth Amendment, has been held applicable to the states by virtue of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). Pennsylvania Rule of Criminal Procedure 316 provides that upon application and proof that a defendant has not been brought to trial within a reasonable time after indictment, a court may order dismissal of the prosecution.

The right to speedy trial has been a much litigated issue of late, in both the state and federal courts. The United States Supreme Court, on the heels of the *Klopfer* decision, supra, decided *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969), and *Dickey v. Florida*, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). In these cases the court emphasized that a state has a duty to make a diligent effort to gain custody of one serving a prison term in another jurisdiction or in the federal prisons for the purpose of a speedy trial on pending charges. These two decisions were held to be retroactive in *Com. v. Ditzler*, 443 Pa. 73, 277 A. 2d 336 (1971). Our own Supreme Court recently analyzed the speedy trial problem in *Commonwealth v. Clark*, 443 Pa. 318, 279 A. 2d 41 (1971), and in *Commonwealth v. Werner*, 444 Pa. 458 (1971), where it held that though criminal defendants have a right to a speedy trial, "the mere fact that there is a lapse of what appears to be too long a period before trial does not entitle a criminal defendant to discharge

unless he was prejudiced as a result of the delay or suffered adverse consequences."

David Wagner was entitled to a speedy trial on the untried Somerset County indictment and the District Attorney therefore had a duty to bring him to trial quickly when appellant requested such disposition. A review of the facts presented clearly indicates that the Somerset County District Attorney carried out his duty and that Wagner had the speedy trial to which he was entitled. The appellant first forwarded his request to be tried to authorities on April 17, 1970, a little over two weeks after he had been returned from Alabama to Lewisburg Federal Prison. This was followed by a formal motion for speedy trial on May 27, 1970. Jury trials in the May Term of the Somerset County courts commenced on May 18, 1970 and concluded about May 27, 1970. Neither the constitutional mandates for speedy trial nor the established case law requires authorities in this situation to obtain the presence of an accused from another authority's prison system, fit his case into an already established court calendar, prepare for trial, and try him within such a short time after his initial request.

The Somerset County court on June 1, 1970 entered an order directing that the instant case be listed for trial at the very next term of court, the September Term, 1970, which was when the trial in fact took place. It would be desirable if all such cases could be handled by our overburdened courts and District Attorneys with such dispatch.[3]

---

[3] It is interesting that appellant, who now complains of a denial of speedy trial, was originally scheduled to be tried on this charge on February 24, 1970, 22 days after the date of his indictment. Had he not fled to Alabama and breached both his federal parole and his bond on the state larceny charge, the issue now on appeal would have never arisen.

It would be pertinent to note that our 180-day rule (19 P.S. §881) was intended to set a limit on the time within which a prisoner in a Pennsylvania state, county, or municipal correctional institution must be brought to trial, after proper demand, on untried indictments. The 180-day standard was not intended and cannot be used as a strict yardstick to determine the timeliness of trial in every case involving defendants incarcerated in institutions in other states or in the federal system.

We have held that the right to a speedy trial ". . . is necessarily relative. It is consistent with delays and depends upon circumstances" *Commonwealth v. Gant,* 213 Pa. Superior Ct. 427, 431, 249 A. 2d 845, 847 (1968) (quoting *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S. Ct. 573, 576, 49 L. Ed. 950 (1905)). The 192 day delay was certainly reasonable in the fact situation presented in the instant case. The appellant's argument that he was denied a speedy trial lacks merit and must be dismissed.

Affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I am in agreement with the excellent opinion by Judge CERCONE for the Court on all issues except appellant's claim that he is entitled to the protection of the Act of September 8, 1959, P. L. 829, 19 P.S. 1431 (Agreement on Detainers).

At the time of appellant's request for trial to Pennsylvania authorities, appellant was a federal prisoner and the Federal Government at such time was not a party to the Agreement on Detainers. Had appellant been a prisoner in a state which was a party to the Agreement on Detainers, he would have been entitled to have the instant prosecution dismissed since he was

not brought to trial within one hundred and eighty days.

Judge CERCONE has stated appellant's argument that "to draw a distinction between inmates imprisoned in Pennsylvania and jurisdictions having complementary legislations and those imprisoned in noncomplementary legislation jurisdictions is violative of the equal protection guarantee of the Fourteenth Amendment."

This argument is identical to that raised in *Commonwealth v. Bunter,* 445 Pa. 413, 282 A. 2d 705 (1971). In *Bunter,* Mr. Justice EAGEN, speaking for himself and for Mr. Justice O'BRIEN, held that: "[t]he Equal Protection argument would have merit only if it could be shown that the Commonwealth was discriminating purposefully or intentionally between those whom it had charged with crime, granting to some a speedy trial while denying it to others . . . . [I]t does not follow that there has been purposeful discrimination because such a trial is not provided under the terms of the interstate compact." 445 Pa. at 423, 282 A. 2d at 710. Ordinarily, such language would be binding upon this Court, but as stated by Judge CERCONE, the cited language from *Bunter* is not precedent in this case.[1] Un-

---

[1] Mr. Justice EAGEN's opinion, which is of federal constitutional dimension, speaks only for two Justices, Mr. Justice EAGEN and Mr. Justice O'BRIEN. Mr. Justice POMEROY concurred in the result in *Bunter,* and Mr. Chief Justice BELL dissented. Mr. Justice COHEN, having died before *Bunter* was handed down, did not participate in the decision of the case. Mr. Justice JONES and Mr. Justice ROBERTS did not participate in either the consideration or the decision of the case. Accordingly, Mr. Chief Justice BELL's statement for a five man Court in *Commonwealth v. Cooper,* 444 Pa. 122, 278 A. 2d 895 (1971), is particularly apposite. There, the Chief Justice explicitly restated the law as set forth in *Commonwealth v. Little,* 432 Pa. 256, 248 A. 2d 32 (1968), and *Commonwealth v. Silverman,* 442 Pa. 211, 275 A. 2d 308 (1971), that where the recorded opinion does not express the views of a majority of the Court, the

like Judge Cercone, however, I do not find *Bunter* persuasive.

The scope of the Equal Protection clause has been most recently stated by the United States Supreme Court in *Reed v. Reed, Administrator*, 404 U.S. 71 (1971), which was decided thirty-one days after *Bunter*. In *Reed*, the Supreme Court restated the principle that "[t]he Equal Protection [of the 14th Amendment] does . . . deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike'. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). The question presented by this case, then is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of (the state law)." 404 U.S. at 75-76.

This standard has previously been adopted by our state courts in dealing with Equal Protection claims in criminal proceedings. In *Wilson Appeal*, 438 Pa. 425, 264 A. 2d 614 (1970), which relied upon *Commonwealth v. Daniel*, 430 Pa. 642, 243 A. 2d 400 (1968), the Pennsylvania Supreme Court stated that: "under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution a state may make distinctions only upon the basis of reasonable classifications."

Accordingly, the language in *Bunter* that an Equal Protection Claim may be raised only if the statutory

opinion is "not decisional" and "cannot be a precedent covered by the stare decisis rule".

discrimination is "purposeful" or "intentional" does not reflect the federal standard which is binding upon us. *Reed v. Reed,* supra. Rather, an Equal Protection claim lies under established precedent when a statute discriminates between persons, and such discrimination is not reasonable and has no fair and substantial relation to the object of the legislation. With this criteria before us, attention should be focused on the purpose of the Interstate Detainer Act to determine if there is a rational basis for affording its protection to prisoners held in states with complementary legislation and not to prisoners held in jurisdictions with no such complementary legislation.

Article I of the Detainer Act is explicit and conclusive with respect to the purposes of the Detainer Act: "[T]he party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

The Detainer Act, therefore, is intended to vest rights in out of state persons extradited to Pennsylvania and to afford them a procedure to secure a trial within 180 days. The Detainer Act is not intended to confer a benefit on a state. Insofar as cooperation between the states was thought desirable to afford out of state prisoners this right, the Detainer Act provides a comity principle and mechanism to ensure the protection of a prisoner's right to a speedy trial. Comity,

however, is not the end goal of the Detainer Act. Otherwise, article IV(c) and article V(c) of the Detainer Act, which provide that a prisoner must be tried within 180 days of his arrival in a receiving state or the indictments against him must be quashed with prejudice, would be anachronistic.

A sending state's interest in having a prisoner who is serving a term of imprisonment therein and who is extradited to another state for purposes of standing trial returned to the sending state only extends to placing a limitation upon the length of time a receiving state may retain custody of such prisoner for purposes of trying him. The interest of the sending state does not require that the receiving state in addition to returning the prisoner to the sending state if it fails to try him within 180 days must also quash the indictments against the prisoner with prejudice. The latter deterrent provision is designed solely to secure an accused a speedy trial.

In light of the stated purposes of the Detainer Act, therefore, there is no reason why any two out of state prisoners awaiting trial in Pennsylvania should be treated differently, as they both suffer the same kinds of prejudice from pretrial delay. See *Klopfer v. North Carolina,* 386 U.S. 213 (1967), and Note, *Developments in the Law Equal Protection,* 82 Harv. L. Rev. 1065, 1082 (1969). Hence, the Detainer Act may not be read to create a disparity in the right of each to a speedy trial.

The remedy for the denial of the speedy trial protection of the Detainer Act with respect to prisoners extradited from nonparty jurisdictions to Pennsylvania is to broaden the protection of the statute so as to apply to such persons. The alternative of striking down the Detainer Act and its protection of the too narrowly restricted class of prisoners now favored

could hardly be in accord with legislative intent. See the opinion by Chief Judge WYZANSKI in *United States v. Sisson,* 297 F. Supp. 902 (D.C. of Mass., 1969), for an example of a court broadening a statute in order to make it constitutional.[2] Therefore, when as in the instant case, the Commonwealth fails, without justification, to try an out of state prisoner upon his request within 180 days, the indictments against such prisoner should be quashed with prejudice.

Article V(c) of the Detainer Act provides that: ". . . [i]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or *article IV* hereof, the appropriate court of the jurisdiction where the indictment has been pending [Pennsylvania] shall enter an order, dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." (Emphasis supplied). This provision is materially identical to that found in the Act of June 28, 1957, the aforementioned 180 day rule.

The result of quashing of indictments was approved in *Commonwealth v. Klimek,* 416 Pa. 434, 206 A. 2d 381 (1965), which dealt with a comparable delay violative of then analogous legislation. In *Klimek,* the Commonwealth failed to bring an accused prisoner to trial within 180 days of his demand for same. As in the instant case, the court below refused to quash the indictments against him. In this posture, the accused prisoner appealed to the Supreme Court prior to trial. The Supreme Court reversed the lower court and stat-

---

[2] See also the discussion in Note, *Developments in the Law Equal Protection,* supra at 1136-1137, relating to the proper considerations in determining whether to strike down a statute or broaden the same, if on its face it fails to provide constitutionally required equal protection.

ed : "The simple truth is that the district attorney, acting on his own, failed to call the indictments for trial. Since the statute was not complied with, the court lost jurisdiction to try the indictments and, under the clear mandate of the statute, the indictments must be dismissed . . . . The court below in refusing dismissal of the indictments, also placed great stress upon the fact that the district attorney did not wilfully delay the trial. This, of course, is not controlling, nor a valid excuse for noncompliance with the provisions of the statute." 416 Pa. at 437.

Accordingly, the lower court in the instant case should have quashed the indictments with prejudice against the petitioner.